## BURL BRADBURN, JR. AND JOHN GIPE *v.* STATE OF MARYLAND

[No. 228, September Term, 1967.]

---

*Decided June 3, 1968.*

The cause was argued before MURPHY, C. J., MORTON, ORTH, and THOMPSON, JJ.

*Alexander Yankelove* and *Michael L. Kaplan* for appellants.

*Henry J. Frankel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Joseph Raymond, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

PER CURIAM.

The appellants Gipe and Bradburn were convicted by a jury of larceny of a metal stand and attached poor box (poor box), of robbing a police officer of his espantoon and revolver, and of assault with intent to murder the officer. Each appellant was sentenced to a term of twenty-one and a half years under the jurisdiction of the Department of Correction.

The first contention on appeal is that there was a denial of a speedy trial because the trial was not held as scheduled on February 14, 1967, but postponed to February 20, the six-day lag having been granted at the instance of the State. The contention approaches the frivolous. *Pachmayr v. State,* 1 Md. App. 270.

Appellants' claim that the evidence was insufficient to convict is also lacking in merit. The appellants and one Halcomb were accosted by policeman Custis at about 5:00 a.m. on May 2, 1964, near or in an alley running east and west through the unit block of Collington Avenue in Baltimore in possession of the poor box (which they abandoned when they fled after beating the officer). St. Andrews The Apostle Russian Orthodox Church (which it was stipulated is a corporate entity) is not far away. The sexton testified the poor box had stood in the vestibule of the church for twenty years; that the deposits made in it were collected and twice a year given to orphans by the church; and that the box "belongs to the vestibule of the Church," and was in the church at 1:00 a.m. on May 2 but not at 4:30 a.m. This evidence permitted the jury properly to infer that the church had a property interest in the box of which the appellants had criminally deprived it. See *Lee and Freeman v. State,* 238 Md. 224, and *Richardson v. State,* 221 Md. 85. The box and stand were marked for identification but never, apparently from oversight, formally admitted in evidence. A picture of the box did come in without objection, various witnesses referred to it and described it, and the parties and the court seemingly assumed it was in evidence. The corpus delicti was proven, *cf. Banks v. State,* 228 Md. 130, and the possession of recently stolen property by the appellants sufficed to support a finding that they had stolen it. *Anglin v. State,* 244 Md. 652; *Chittum v. State,* 1 Md. App. 205.

The police officer testified that as he was about to take the trio into the station house, and had taken hold of one of them, he was knocked to the ground from behind and his espantoon and revolver were taken from him. All three continued to hit him, beat him with stick and fists and kick him as he lay on the ground. He was hit on the head repeatedly with his own stick and shot in the face with his own pistol. He was kicked by all three in the face, back and arms. He was taken to the hospital a bloody mess and kept for treatment of multiple lacerations and contusions, including head wounds which required many stitches, and a broken knee.

Appellants argue that the arrest was illegal and their use of force to resist it was justified. If it be assumed that the arrest

was illegal, the evidence clearly permitted the jury to find that there had been used entirely unnecessary and excessive force, sufficient to show malice and an intent to kill. See *Jenkins v. State,* 232 Md. 529, at page 534.

The espantoon was later found by the police not far from the place of the assault. Halcomb's mother testified that in the early morning hours of May 2:

> "Earnest [her son] and Johnny [Gipe] and Bradburn 'had one [a gun like that shown her which had been proven to have been that of the assaulted officer] at my house * * *. Bradburn rolled a gun up in a handkerchief and I took the gun and threw it away.' "

(She threw it in the sewer, and later took the police to recover it.) There was enough to permit the jury to infer that appellants had a larcenous intent in forcibly taking the espantoon and pistol from the officer. *Hadder v. State,* 238 Md. 341, 354, 355; *Midgett v. State,* 216 Md. 26, 42.

The appellants complain that the trial judge did not rule as a matter of law that the arrest was illegal. It is not clear that he was requested to do so or that there was any necessity for him to do so, but if he considered such a ruling it was in connection with the admissibility of the poor box, the espantoon and the revolver. He found it unnecessary in this context to make a ruling because nothing was seized as a result of the encounter of the officer with the appellants, the box having been abandoned at the scene, and the espantoon and revolver having been later discarded. In its charge to the jury, the court in effect advised the jury that the arrest had been illegal and put to them the question of the use of excessive force. We find no substance to this contention.

Appellants' final contention worthy of discussion is that the court's instructions on joint criminal liability were prejudiciously erroneous. The claimed grievance, in reliance on *Agresti v. State,* 2 Md. App. 278, is that the court told the jury that appellants could be found to be principals in the second degree without specifying that there must be a prior finding of a principal in the first degree. The charge advised the jury that:

> "* * * it is not necessary * * * that you determine actually who wielded the nightstick or actually took the

nightstick from the person of Officer Custis or who actually took the gun from the officer or who actually handled the gun and when these actions were done if you find that these actions were a joint venture or a joint action or a joint effort of * * * [the] two defendants * * * anyone who aids and abets in the commission of a felony is as liable as anyone else who takes an active part in that act, limited only by the fact that mere presence at the scene without doing anything else is not sufficient to convict.

\* \* \*

"If you find this was a joint effort, that the two defendants actively participated in and abetted that joint effort it is not necessary for you to determine who actually did what specific act."

We cannot see how any hurt could have come to the appellants from the charge. The evidence is quite clear that Gipe, Bradburn and Halcomb all were active participants in the assault and robbery of the officer and so were more than accessories. *Agresti* is not controlling. All those who participate in a felony are equally guilty. *Boone v. State,* 2 Md. App. 80; *McEntire v. State,* 2 Md. App. 449.

*Judgments affirmed.*