UPHOLSTERERS', CARPET AND LINOLEUM MECHANICS INTERNATIONAL UNION, LOCAL NO. 76, NEW JERSEY SECTION, et al., complainants,

*v.*

ESSEX REED & FIBRE COMPANY, INCORPORATED, a corporation, et al., defendants.

[Decided July 31st, 1934.]

*Mr. Charles Handler,* for the complainants.

*Messrs. Furst & Furst,* for the defendants.

BERRY, V. C.

This matter comes on for hearing on the return of an order to show cause advised by Vice-Chancellor Bigelow and imposing limited restraint. The object of the bill is to enforce an employment agreement entered into between the complainant local and the defendant corporation, and by which the defendant agreed to employ only members of the complainant union and under conditions therein specified. The agreement is for a term of one year with the privilege of

termination by either party upon thirty days' notice in writing given prior to the expiration date which is fixed therein as September 1st, 1934. If not so terminated it thereafter "continues in perpetuation from year to year." There is also a motion to strike the bill on the ground that it does not present an equitable cause of action and that there is an adequate remedy at law. The defendant admits the execution of the agreement but contends that it was temporary only until the N. R. A. code was adopted and that after the approval of such code the agreement was to be modified to eliminate inconsistencies. It is also contended by the defendant that eighty per cent. of plants similar to that of the defendant operate under the N. R. A. code which permits a forty-hour week and piece work while the agreement provides for a thirty-five hour week and certain rates of pay. It is apparent from the bill of complaint that at or about the time the agreement was entered into a strike of the employes of the defendant was in progress and that there had ben a previous employment agreement between the parties. The agreement, copy of which is attached to the bill of complaint, contains the following clause:

"All persons employed on work consisting of upholstering furniture, tufting machine operators, sewing machine operators springers, cushion makers and apprentices, shall be members in good standing of Local No. 76 of the Upholsterers Carpet and Linoleum Mechanics International Union of North America.

Should the union be unable to furnish sufficient workers from its membership after 48 hours time had elapsed, from the date the employer has requested the representative of the union to furnish extra help, the employer may hire non-members with the understanding that the non-member shall file application for membership in the union before he starts to work."

On the back of the first sheet of the agreement the names of the defendant's empolyes, twenty-seven in number, are written in ink with the rate of their pay opposite their respective names. The defendant claims, and it is not denied, that the agreement was for the benefit of the employes thus named. Twenty-one of these men have now joined in a petition of the defendant for a modification of the agreement to con-

form to the N. R. A. code. That the agreement was temporary is denied by the complainant.

The defendant's plant is located at 84 Monroe street, Newark, Essex county, New Jersey, in what is known as the "metropolitan area." The complainant international union maintains locals throughout this area and, according to the complainants' affidavits, contracts identical with the one which is the subject-matter of the present litigation have been entered into between the complainant union and a majority of employers engaged in businesses similar to that of the defendant company throughout the metropolitan area. According to this affidavit, fifty-two out of eighty such employers have signed contracts identical with the one here involved. This is a part of the complainants' proofs and indicates that the present contract is but part and parcel of an attempt to unionize the whole industry in the metropolitan area and to create a monopoly of labor in that industry. Such a contract is opposed to public policy and is void. *Brennan* v. *United States Hatters of North America, 73 N. J. Law 729; 65 Atl. Rep. 165; Lehigh Structural Steel Co.* v. *Atlantic Smelting and Refining Works, 92 N. J. Eq. 131; 111 Atl. Rep. 376; Baldwin Lumber Co.* v. *Local No. 560, International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America, 91 N. J. Eq. 240; 109 Atl. Rep. 240; Walsche* v. *Sherlock, 110 N. J. Eq. 223; 159 Atl. Rep. 661; Connors* v. *Connolly, 86 Conn. 641; 86 Atl. Rep. 600; Berry* v. *Donovan, 188 Mass. 353; 74 N. E. Rep. 603; 13 Corp. Jur. 492,* and see note, *45 L. R. A. (N. S.) 564.*

Counsel for complainants has cited *Knee* v. *Suitcase, Bag and Portfolio Makers' Union, 142 Atl. Rep. 184,* and *Gilchrist Co.* v. *Metal Polishers, Buffers and Platers Local Union No. 44, 113 Atl. Rep. 320,* both decisions of this court, in support of the bill, but neither is in point.

In *Lehigh Structural Steel Co.* v. *Atlantic Smelting and Refining Works, supra,* Vice-Chancellor Backes said:

"The principle of the closed shop, *i. e.,* the monopolization of the labor market, has found no judicial sponsor. In whatever form organized labor has asserted it, whether to the

injury of the employer, or to labor, or to labor unions outside of the fold, the judiciary of the country has responded, uniformly, that it is inimical to the freedom of individual pursuit guaranteed by the fundamental law of the land, and contravenes public policy."

The following language appears in the syllabus to the same case:

"The provisions of a contract between an association representing nearly all the building contractors of New York City and Long Island and an association representing the labor unions of these communities, binding the contractors to employ only union men in their enterprises therein, and having for its object the closed shop and the monopolization of the labor market by the unions, violates public policy as to monopolies."

There is a wealth of decisions in other jurisdictions to the same effect and so far as this state is concerned the law on that point must be considered as settled.

My attention has been called to a decision of Mr. Justice Smith in the New York supreme court, special term, reported in the New York Law Journal of February 7th, 1934, in the case of *Bandler* v. *Lorberbaum,* in which an application similar to that pending in this cause was made and in which preliminary restraint was granted. In that case the court said:

"The defendants further contend that the agreement is illegal and void in that it requires defendants to employ only members of plaintiff's union. This might be so if it appeared that the agreement operated so generally throughout the community as to prevent craftsmen in the trade from obtaining employment and earning their livelihood. * * * No such facts appear on this motion and the court cannot, therefore, in advance of a trial on the merits, condemn this agreement as being against public policy and void for that reason."

That case is cited as authority for the granting of the preliminary restraint here, but it is not. The proofs there absent are furnished here by complainants' own affidavits to the effect that the identical agreement which it is here sought to

enforce is operating in about sixty-five per cent. of the industry in the metropolitan area. The inference to be drawn from these proofs is that the contract presently involved is the result of an intensive campaign on the part of the union to unionize the whole industry in the metropolitan area. Under these circumstances, the right of the complainant to specific performance of the agreement is at least sufficiently in doubt to warrant the refusal of preliminary restraint. The limited restraint imposed by the order to show cause will be vacated.